No. 13,859.

HEIRS OF PETER MORAN VS. SOCIETE CATHOLIQUE D'EDUCATION RELI-
GIEUSE ET LITERAIRE DE LA NOUVELLE ORLEANS..

### SYLLABUS.

Plaintiffs. as heirs of their father, sue the defendant on a certificate of deposit.
The defendant received a number of deposits ; at the instance of the depos-
itor, the account was changed from daughter to father at the latter's
request.

In the different transactions between the parties, a certificate remained uncalled
for and was found among the father's papers many years after his death.

The testimony of the treasurers who kept the defendant's books at different
dates and the entries in the books to which they referred and swore, while
testifying, as well as the utterances of at least one of the plaintiffs, before
suit was brought, show that, owing to carelessness or oversight on the part
of defendant's treasurer at the time, the receipt remained outstanding.

The court holds that only one account was kept, and only one line of deposits,
and not two, as contended by plaintiffs.

The sums carried on this account, as due to plaintiffs, have been paid, and the
receipt they hold is without consideration.

A bookkeeper may consult his books to refresh his memory and testify to facts
of which he has therein kept a record.

The name of the depositor was not changed with the view of committing a
wrong. The request of the one in whose name the deposits were credited,
and the acquiescence of all concerned, leads the court to hold that
change in name of the depositor was not made without the assent of all
concerned.

A witness is not absolutely discredited because he does not recall that he has
signed a receipt representing a large balance. A witness' testimony, if he
is in good faith, may be unreliable as to a particular fact and not as to
other facts.

A PPEAL from the Civil District Court. Parish of Orleans.—
King, J.

*Charles Louque,* for Plaintiffs, Appellants.

*McCloskey & Benedict,* for Defendant. Appellee.

The opinion of the Court was delivered by

BREAUX. J.  Plaintiffs seek to recover the amount of a certificate of
deposit issued to their late father by the defendant.

They set out in their petition that their father died on the 2nd of
May, 1892; that on the 12th day of March. 1889, their late father

deposited with the Societe Catholique d'Education Religieuse et Liter-aire de la Nouvelle Orleans, through A. Arque, its treasurer, the sum of forty-seven hundred dollars, for safe keeping, at his own risk, and subject to his call, as is shown by a receipt.

Defendant denied the averments of plaintiffs' petition. During the trial an amended and supplemental answer was filed, in which defendant pleaded that from time to time money was deposited by the late Peter Moran. Some of it was invested by defendant. Payments were made to the heirs of Peter Moran and to himself, and the account was closed the 16th of July, 1892; that the receipt sued upon was not called back and returned to the defendant, although the money it evidences had been paid; that a full and final settlement of the account had been given to the plaintiff at the time when all the facts were familiar and fresh in the minds of the parties defendant, and that plaintiffs are bound by their acquiescence.

The judge of the District Court rejected the demand. From the judgment plaintiffs appeal.

The facts give rise to the important issues. In order to determine whether the amount received has been returned, we have made as close an analysis of the facts at issue as we possibly could. The genuineness of the receipt before referred to is not denied, but defendant contends that it has been paid in full.

The first witness who testified (one of the daughters of the late Peter Moran) said that she found this receipt with other papers in one of the vest pockets of her late father about five years after his death. The papers were handed to a member of the bar, who in looking over these papers, had his attention attracted by this receipt, and called the attention of one of the plaintiffs to its value as evidence of the amount it represented, to-wit: forty-seven hundred dollars.

The treasurer of the society, by whom this receipt had been issued, had returned to France. She wrote to him about it, and she testified that she received no answer from him, and that she knew nothing of his writing to anyone else. A letter was produced by counsel for the defendant, and evidence afterward introduced showing that a copy of a letter received from the ex-treasurer by the treasurer at the time was sent to this witness; this letter of the ex-treasurer gave some of the details regarding the amounts claimed as due.

Plaintiffs objected that the letter was a mere ex-parte statement. The court ruled that it was not admissible unless it was shown that

plaintiffs had knowledge of this letter. The testimony of the ex-treasurer having been taken by commission, we have given no weight to this letter, although the ruling was proper as stated, to the extent that its contents were known to plaintiffs.

This witness, resuming the trend of her testimony, after the District Judge had ordered this letter to be filed in evidence, stated that she had drawn money from defendant from time to time, beginning in 1882; the amount she did not recall, but she remembered having withdrawn the balance on July 16th, 1892, at which time the ex-treasurer, Arque, was not here, having left this country in the year 1889. She also testified that when the receipt sued on was presented for payment, the treasurer, Rev. N. Davis, told her they had never kept books. She further swore that all receipts issued by the defendant had been returned; that the necessity of the return had often been urged when they called on the defendant on business.

The four sisters, daughters of Peter Moran, had, at different times, drawn money from the defendant. A statement furnished to plaintiffs by the defendant through the last treasurer named above obtained from plaintiffs and introduced in evidence, over plaintiffs' objection, the court ruling, properly, as we think, that the objection went to the effect and not to the admissibility.

Witness, resuming, testified regarding an account she claimed her father had with the defendant for amounts deposited with him, but really knew nothing of any deposit save that which is evidenced by the receipt upon which suit was brought. This witness complained because the money, some eight or nine thousand dollars, in which it seems the four sisters had an interest, had been transferred from the account of Maggie Moran, one of the sisters, to that of the father, without their knowledge and consent; that their father had no right to any part of this fund.

From the testimony of the plaintiffs, we conclude that they had the amount before mentioned in deposit with the defendant; that it was handed to them, part of it by their father and mother, and that it was deposited by Miss Maggie Moran. They withdrew the entire sum; and that, years afterward, the receipt sued on was found by them; that they did not know whether or not their father had made any deposit of money and that he owned any money at all save that in which, we infer, he may have had an interest, although deposited in the name of his daughter. The father of these young ladies had not

always been successful in business and toward the end of his days he had become a traveling salesman for a large commercial house.

On the part of the defendant, Rev. N. Davis testified that in 1889 he succeeded the treasurer, Rev. A. Arque, who left for France about that time, and that when he took charge of defendant's treasury he found a balance in favor of the Misses Moran of forty-eight hundred dollars, which he paid to them.

Plaintiffs' contention is that there were two deposits, one in the name of Maggie Moran and the other in the name of Peter Moran, represented by two certificates, one handed to the former and the other to the latter, and that the defendant is in error in seeking to impute payment made to Maggie Moran on the certificate which was issued to Peter Moran.

Rev. Mr. Arque, ex-treasurer, testified that in 1888 he transferred a comparatively small balance to the credit of Peter Moran at his request, who had previously made the real deposit in the name of his daughter; that deposits were sometimes withdrawn by the Misses Moran, and sometimes by the father. When one of the family called for any part of the deposit, treasurer Argue would require the old receipt, compare it with his books, and afterwards hand over the amount called for to the one calling for it, and that he, the treasurer, after taking up the receipt handed to him by the one calling for money, would destroy it and issue another. The new balance was then represented by a new receipt. He does not recollect having issued the receipt upon which the suit was brought. But, with some particularity, swears that on the 1st of October, 1888, the father of the plaintiffs, Peter Moran, had five thousand dollars to his credit: that on the 13th of February he withdrew two hundred dollars, and on the 12th of March one hundred dollars, leaving the exact balance of the receipt and corresponding with its date.

On the 27th of March, following, fifty dollars was withdrawn. On the 18th of May, Peter Moran deposited three hundred and fifty dollars, and on the 19th of July, one hundred and eighty-nine dollars was withdrawn, leaving a balance on that day of four thousand eight hundred and twelve dollars. This was the balance this witness left in the treasury of the defendant. This witness testified in substance that he had not received a cent from the late Peter Moran, which was not accounted for in the account kept by him, witness, and which ends, so far as he is concerned, with the balance just stated.

To sustain plaintiffs' contention, we would have to hold that on the 12th of March, 1889, the treasurer had two amounts, each for forty-seven hundred dollars; one due by him to the daughter and the other to the father. We have seen that the amount has been paid to the daughter at different times. The present treasurer, Rev. Davis, has established that fact beyond all question. His testimony leaves no ground to suspect that she has not been paid as he swears. Yet plaintiffs claim identically the same amount as due to their late father. His predecessor, as treasurer, swears positively that no other sums were deposited save place reliance on the receipt in question, which is not conclusive, particularly under the circumstances. It was found many years after the death of plaintiffs' father. After it had been found, they kept it many years in their possession before bringing suit. The youngest of the plaintiffs, who is also a witness, in conversation with one of the members who serves his church as pastor, or sexton, said to him: "Brother, you don't owe us anything." some time before the suit was brought.

If the amount was not paid to Maggie Moran, as contended by defendant, and as the facts appear to warrant the conclusion, then the treasurer, Arque, must have received the amount and retained it, for it nowhere appears that it was ever turned over to the plaintiffs. Of course, the defendant would be responsible if its treasurer had thus appropriated the amount, but we are not convinced that such an appropriation could have been made.

The late Peter Moran lived some three years after this receipt had been given. He was on intimate terms with the members of the defendant society and called on them frequently. He spoke of wishing to save something for his old age and the support of his children. Before he died, the amount on the only account (which was kept in his own name, and not that of his daughter) by defendant had been reduced to less than fifteen hundred dollars. No one ever heard him mention anything about another and larger amount to his credit in the hands of the defendant. We are not inclined to the conclusion, on the evidence before us, to hold the defendant bound for an amount as having been unaccounted for by its treasurer.

All witnesses not discredited in some way, stand as to veracity on about the same plane. Owing to an unfaithful memory, or for any

other legitimate cause, witnesses may err, and when this becomes evident the testimony no longer has weight. Here we have not found that it was possible to conclude that error had been committed by either of the treasurers in regard to the facts to which each had testified.

With reference to the first in date of service upon whom the responsibility rests, he was sixty-seven years of age, less a few months, when he testified. He was spiritual prefect and librarian of a free school in France. While here, he was librarian, professor of French; spoke occasionally in the pulpit, as minister, and was book-keeper and treasurer. Under the circumstances, it would be difficult to conclude that any priest, preacher, minister, or rabbi of any church, or any other witness of good standing or repute as to that matter, would deliberately testify to a falsehood and take from the children of one who was his friend an amount earned for them by his own toil.

We think that money was deposited with defendant, of which an account was kept; a receipt was issued and, through forgetfulness, it was not returned, and that the amount was paid back on other receipts without requiring the old to be produced.

We agree with the learned counsel of plaintiffs, that books of the defendant were not admissible in evidence: These books had been kept by the treasurer up to the date before mentioned. But he could be heard to testify as to the correctness of the entries therein and to his act as book-keeper, by refreshing his memory by referring to his own books, particularly in view of the fact that more than ten years had elapsed since these accounts had been kept by this witness.

The witness, Rev. Mr. Arque, testifies that he was, personally, always opposed to deposits, but that he was not the president. In the presence of an unfounded hope which the receipt he issued, owing to carelessness of some sort, had given rise, it is to be regretted that the good advice of this witness was not heeded.

The District Judge saw and heard the witnesses. We have carefully read the testimony and found no good reason to reverse the judgment.

By reason of the law and the evidence being in favor of the defendant, the judgment appealed from is affirmed.

Rehearing refused.